**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WILLIAM THOMAS GARRISON,

                Plaintiff,

vs.                              Case No. 3:10-cv-417-J-JRK

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

William Thomas Garrison ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). His alleged inability to work is due to physical and mental illnesses. Transcript of Administrative Proceedings (Doc. No. 15; "Tr."), at 55, 97. On August 23, 2005, Plaintiff filed applications for DIB and SSI, alleging an onset date of December 2, 2004. Tr. at 12, 96-103; see also Plaintiff's Brief Addressing Basis for Reversal of the Final Decision of Commissioner (Doc. No. 16; "Pl.'s Mem."), filed January 18, 2011, at 2, 4. Plaintiff's claims were denied initially, Tr. at 44-46,[2] and upon reconsideration, Tr. at 48-51, 52-54. On November 27, 2007, an Administrative Law Judge ("ALJ") held a hearing during which Plaintiff and a vocational expert ("VE") testified. Tr. at 354-84. The ALJ issued an unfavorable Decision on March 10, 2008. Tr. at 12-32. On

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 19), filed February 2, 2011; Order of Reference (Doc. No. 20), entered February 3, 2011.

[2] The initial denial of SSI benefits is not in the record.

March 10, 2010, the Appeals Council denied Plaintiff's request for review. Tr. at 4-6. Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) on May 14, 2010 seeking judicial review of the Commissioner's final decision. Plaintiff has exhausted his administrative remedies and this case is properly before the Court.

Plaintiff raises four issues on appeal: (1) whether the ALJ's failure to consider the notes from ACT Corporation, Plaintiff's treating facility, and his failure to properly consider the opinions of Denise Verones, Ph.D., one of Plaintiff's examining physicians, led to an improper residual functional capacity ("RFC") assessment of Plaintiff; (2) whether the ALJ posed an accurate hypothetical to the VE; (3) whether the ALJ properly considered the alleged side effects of Plaintiff's medications; and (4) whether the ALJ erred in finding Plaintiff not fully credible. Pl.'s Mem. at 2-3. Upon review of the record and the parties' respective memoranda, the undersigned finds this case is due to be reversed and remanded for further proceedings consistent with this opinion and order.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.

---

[3]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 12-32.  At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since December 2, 2004, the alleged onset date."  Tr. at 17.  At step two, the ALJ ascertained Plaintiff suffers from "the following severe impairments: degenerative disc disease, with herniation of the lumbar spine, diabetes, hypertension, bipolar disorder, panic disorder with agoraphobia, history of polysubstance abuse and history of alcohol abuse."  Tr. at 17.  The ALJ then detailed Plaintiff's medical history before finding at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 22.  The ALJ determined Plaintiff has the following RFC:

> [T]o perform a significant range of light work[. Plaintiff] can occasionally lift/carry/push/pull 20 pounds, and can frequently do so with 10 pounds or less; he can sit for up to 8 hours and can stand/walk for up to 6 hours in an 8-hour day; he can climb stairs and ramps, but not ropes, ladders or scaffolds; he can balance and can occasionally stoop, kneel, crouch or crawl; he is capable [of] work that involves low to moderate stress and which work can be performed by an individual working alone; he should avoid unprotected heights and hazardous moving machinery.

Tr. at 24.  Then, at step four, the ALJ determined Plaintiff "is unable to perform any past relevant work."  Tr. at 29.  Finally, at step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and" RFC, the ALJ indicated "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  Tr. at 30.  Therefore, the ALJ concluded Plaintiff was not disabled from the alleged onset date through the date of the Decision.  Tr. at 32.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

Plaintiff challenges the ALJ's Decision in four ways.  First, Plaintiff alleges the ALJ's failure to consider the notes from ACT Corporation and to properly consider the opinions of Dr. Verones led to an improper RFC assessment of Plaintiff.  Pl.'s Mem. at 2.  Second, Plaintiff contends the ALJ erred by relying on the testimony of a VE after posing an improper

hypothetical to the VE. Id. at 3.  Third, Plaintiff claims the ALJ failed to consider the side effects of Plaintiff's medications.  Id.  Fourth, Plaintiff asserts the ALJ erred by finding Plaintiff "not fully credible."  Id.  Each issue is addressed in turn, with the exception of the third and fourth issues which are addressed together.

## A. Consideration of ACT Corporation's Notes and Dr. Verones's Opinions

Plaintiff's first issue deals with the ALJ's consideration of the treatment notes from ACT Corporation and the opinions of Dr. Verones.  Plaintiff frames the first issue as: "[w]hether the ALJ erred in determining that [Plaintiff] has the [RFC] to perform a significant range of light work after failing to consider all of [Plaintiff's] medical conditions and ignoring opinions [and] global assessment of functioning [("GAF")] scores from [Plaintiff's] treating facility," ACT Corporation.  Pl.'s Mem. at 2, 8 (internal quotations omitted).  In support, Plaintiff argues "the ALJ did not adequately consider the opinions of several treating physicians,"[4] and the ALJ ignored the GAF scores assigned to Plaintiff by ACT Corporation and by an examining physician, Dr. Verones.  Id. at 10-11.  Plaintiff, however, does not specify the medical conditions the ALJ allegedly ignored.  To resolve this issue, the undersigned first addresses the treatment notes from ACT Corporation and then Dr. Verones's opinions.

### 1. ACT Corporation's Treatment Notes

The Regulations list acceptable medical "[s]ources who can provide evidence to establish an impairment."  20 C.F.R. §§ 404.1513(a), 416.913(a). The acceptable medical sources are: (1) licensed physicians; (2) licensed or certified psychologists; (3) licensed optometrists; (4) licensed podiatrists; and (5) qualified speech-language pathologists.  20

---

[4]   Although Plaintiff refers to "several treating physicians," Pl.'s Mem. at 10, it is evident from Plaintiff's contentions that he is referring to the opinions of his medical sources at ACT Corporation.

C.F.R. §§ 404.1513(a), 416.913(a). Although nurse practitioners, mental health counselors, social workers and the like are not listed as acceptable medical sources for the purpose of establishing an impairment, "evidence from other sources [may be used] to show the severity of [the claimant's] impairment(s) and how it affects [the] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (stating other sources may include "nurse-practitioners . . . and therapists"). Furthermore, "[t]he opinions of a treating nurse practitioner constitute 'evidence to be considered on the record as a whole.'" Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *1 (M.D. Fla. Apr. 17, 2008) (unpublished) (quoting Gramlisch v. Barnhart, 464 F. Supp. 2d 876, 881 (E.D. Mo. 2006)); see also SSR 06-3p (recognizing opinions from sources "who are not technically deemed acceptable medical sources . . . are important and should be evaluated on key issues . . .") (internal quotations omitted).

Here, the only mention of ACT Corporation in the ALJ's Decision is in the context of discussing the treatment notes and opinions of the examining and nonexamining physicians. See Tr. at 20, 21, 26, 28. These references solely note that Plaintiff informed the respective physicians that he was being seen at ACT Corporation or attending counseling at ACT Corporation. See Tr. at 20, 21, 26, 28. As explained more fully infra, these references are insufficient for the undersigned to conclude the ALJ properly evaluated and considered ACT Corporation's treatment notes.

Plaintiff was seen at ACT Corporation from August 2005 through September 2007. See Tr. at 273-308. During that time, ACT Corporation continually treated Plaintiff for major depressive disorder, anxiety disorder, and bipolar II disorder. Tr. at 273-82, 290-93, 298-301, 308. The treatment notes from ACT Corporation appear to be signed by nurse practitioners who are not deemed to be acceptable medical sources under the Regulations. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Regardless, the mere mention of a treating

source in an ALJ's decision does not satisfy the ALJ's requirement to review the record as a whole and consider evidence from other sources on key issues. See Corbitt, 2008 WL 1776574, at *1; SSR 06-3p.  Not only is ACT Corporation the only treating source in the record, but ACT Corporation saw Plaintiff at least seventeen times, while the examining physicians of record each saw Plaintiff once, with the exception of Dr. Verones who examined Plaintiff twice.  Being the only treating source in the record, it would seem ACT Corporation obtained the most "detailed, longitudinal picture" of Plaintiff's medical history. 20 C.F.R. § 404.1527(d)(2).  And, although an ALJ is not required to "specifically refer to every piece of evidence in his decision," the ALJ cannot broadly reject evidence because such a rejection would not enable a reviewing court "to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)).

Because the ALJ did not specifically discuss the treatment notes from ACT Corporation, it is impossible to determine whether the ALJ simply overlooked those notes or whether ACT Corporation's notes were considered apart from the examining and nonexamining physicians' opinions.  Without any discussion or explanation from the ALJ regarding ACT Corporation's treatment notes, the undersigned cannot determine whether the ALJ's Decision is supported by substantial evidence. See Winschel v. Comm'r Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  Therefore, remand is appropriate. On remand, the Commissioner should consider and evaluate the treatment notes from ACT Corporation and explain how those notes affect Plaintiff's RFC.

The undersigned notes that Plaintiff's primary concern appears to be that the ALJ did not address the GAF scores assigned to Plaintiff by ACT Corporation.  Pl.'s Mem. at 11. Such a contention standing alone is generally insufficient to warrant reversal, because "the

Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2001 WL 1173632 (Aug. 21, 2000)); see also Parsons v. Astrue, No. 5:06cv217/RS-EMT, 2008 WL 539060, at *7 (N.D. Fla. Feb. 22, 2008) (unpublished) (noting same).  The undersigned recognizes that as a result of the Commissioner's refusal to endorse the GAF scale, and due to the subjectivity of the clinician's determination involved in assigning the GAF score, courts appropriately assign GAF scores limited weight in reviewing an ALJ's determination regarding a plaintiff's functional capacity.  Indeed, as this Court noted, "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (unpublished) (citing Deboard v. Comm'r Soc. Sec., 211 F. App'x 411, 415-16 (6th Cir. 2006)).

Nevertheless, as indicated above, the undersigned cannot determine whether and to what extent the ALJ even considered the treatment notes from ACT Corporation, if at all. Therefore, the Commissioner shall consider and evaluate the entirety of ACT Corporation's treatment notes and explain the effect, if any, on Plaintiff's RFC.

### 2. Consideration of Dr. Verones's Opinions

Plaintiff also argues the ALJ did not properly consider the GAF scores assigned to Plaintiff by Dr. Verones.  Pl.'s Mem. at 11.  To address this issue, the undersigned must determine whether the ALJ properly rejected Dr. Verones's opinions.

The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians[;] treating physicians'[] [opinions] are given more weight than [nontreating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." McNamee v. Soc. Sec. Admin., 162 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  As indicated above, the following factors are relevant in determining the weight to be given to a physician's opinion:  (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

When analyzing medical opinions, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1178-79 (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).

ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id. at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, the ALJ summarized Dr. Verones's notes from both examinations she conducted of Plaintiff. Tr. at 19-20, 21-22, 28-29. Regarding the first examination on November 8, 2005, the ALJ accurately summarized Dr. Verones's opinion, with the exception of a minor difference in the age Plaintiff reported he first used marijuana.[6] Tr. at 19. The ALJ concluded that "the impression [Dr. Verones] gives of [Plaintiff] as a depressed, desperate man, is inconsistent with her GAF opinion."[7] Tr. at 20. Therefore, the ALJ rejected Dr. Verones's "opinion as being internally inconsistent." Tr. at 20. As to Dr. Verones's second examination of Plaintiff, the ALJ accurately described Dr. Verones's treatment notes. Tr. at 21-22. The ALJ again concluded Dr. Verones's opinion was "internally inconsistent" because Dr. Verones's conclusion that Plaintiff was "emotionally unstable and unable to work . . . is inexplicable considering that [Dr. Verones] was clearly aware that [Plaintiff] was taking care of his (five) children during summer vacation, that [Plaintiff] had no problem driving and that [Plaintiff] took the children with him when he ran errands." Tr. at 22.

After determining Plaintiff's RFC, the ALJ delineated four reasons for rejecting Dr. Verones's opinion that Plaintiff "was unstable." Tr. at 29. First, the ALJ reasoned "it would appear that taking care of five children is a full-time job in itself." Tr. at 29. The ALJ's second reason was "it is doubtful that someone as unstable as [Dr. Verones] said [Plaintiff]

---

[6] The ALJ indicated Plaintiff reported to Dr. Verones he had first used marijuana when he was 15 years of age, Tr. at 19, when in fact Dr. Verones's notes indicate Plaintiff told her that he first used marijuana when he was 14 years of age, Tr. at 182. This minor discrepancy is immaterial.

[7] The ALJ recognized that Dr. Verones assigned a GAF score of 55 to Plaintiff, "which according to the DSM-IV, is indicative of only moderate psychiatric symptoms." Tr. at 20.

-10-

was would be permitted to drive a motor vehicle." Tr. at 29. Third, the ALJ observed "it would also seem that an unstable individual would lack the ability to deal with demands of five children on a daily basis." Tr. at 29. Fourth, the ALJ reasoned "if [Plaintiff] was as antisocial and unable to concentrate as he alleges, it does not seem likely that he was able to drive five children around with him while doing errands." Tr. at 29.

As required, the ALJ properly addressed Dr. Verones's opinions, including the GAF scores Dr. Verones assigned to Plaintiff. Additionally, the ALJ specifically articulated a number of reasons for providing no weight to Dr. Verones's opinions, and those reasons are supported by substantial evidence. Therefore, the undersigned finds no error with respect to the ALJ's treatment of Dr. Verones's opinions.

### B. The ALJ's Hypothetical Posed to the VE

The second issue raised by Plaintiff regards the hypothetical posed to the VE. See Pl.'s Mem. at 3, 13. Specifically, Plaintiff contends the hypothetical the ALJ posed to the VE did not conform to the RFC assessment of Plaintiff and did not accurately reflect Plaintiff's limitations. Id. Regarding Plaintiff's limitations, Plaintiff only specifies that "the hypothetical posed to the [VE] did not contain all the limitations as noted by the treating facility[, ACT Corporation] or the examining consultative physician," Dr. Verones. Id. at 13. Plaintiff's contentions involving ACT Corporation and Dr. Verones have already been resolved supra Part IV.A. Consequently, the undersigned need only address Plaintiff's argument that the wording of the RFC differs from the wording of the hypothetical posed to the VE. Pl.'s Mem. at 14.

In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy. See 20 C.F.R. § 416.920(a)-(f). When the ALJ relies on the testimony

of a VE, "the key inquiry shifts from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE."  Corbitt, 2008 WL 1776574, at *3.  In determining an individual's RFC and later posing a hypothetical to a VE which includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).  "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001).

Here, in posing the hypothetical to the VE, the ALJ indicated the work performed "would need to be . . . low to moderate stress.  And the work would need to be done primarily alone.  That does not mean there couldn't be other people physically present.  But I'm saying that the actual work should involve little interaction with other people." Tr. at 375. The ALJ's RFC assessment of Plaintiff noted Plaintiff "is capable of work that involves low to moderate stress and which work can be performed by an individual working alone."  Tr. at 24.  Plaintiff does not raise any arguments or suggest any prejudice occurred as a result of this difference in wording.  In fact, Plaintiff only claims that because the RFC and hypothetical contained different wording, "the testimony of the [VE] should be rejected." Pl.'s Mem. at 14.  This mere difference in wording between the RFC and the hypothetical is insignificant because a focus on the hypothetical itself, see Corbitt, 2008 WL 1776574,

at *3, shows the ALJ accurately accounted for all of Plaintiff's impairments. Accordingly, the undersigned finds no error with regard to the ALJ's hypothetical posed to the VE.

### C. Side Effects of Plaintiff's Medications and Plaintiff's Credibility

Plaintiff's final two issues are discussed together. Plaintiff alleges "[t]he ALJ erred in failing to consider the side effects of [Plaintiff's] medications." Pl.'s Mem. at 15. Additionally, Plaintiff argues "the conclusion of the ALJ that the testimony of the Plaintiff is 'not fully credible' is not supported by substantial evidence in the record." Id. at 17 (citing Tr. at 26).

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson, 284 F.3d at 1225 (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration,

-13-

frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)); see also 20 C.F.R. § 416.929(c)(3)(i)-(vi) (providing the same).  However, a plaintiff's ability to participate in daily activities for a short duration does not preclude a finding of disability.  See Lewis, 125 F.3d at 1441 (finding that participation in everyday activities "such as housework and fishing" is insufficient to disqualify "a claimant from disability").

In his Decision, the ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible for the reasons stated."  Tr. at 26.  The ALJ's reasons revolved around the inconsistencies between Plaintiff's statements during the hearing and his statements to his various examining physicians.  First, the ALJ recognized Plaintiff "reported that he had not used illicit drugs or smoked pot since 2000."  Tr. at 25.  The ALJ found "[t]hat statement is inconsistent with [Plaintiff's] report to Dr. Oatley in May of 2006 when he stated that he had last used alcohol and cannabis 6 months before."  Tr. at 25.  Next, the ALJ observed Plaintiff "stated that he had herniated discs, which again is inconsistent with the evidence [because] Dr. Mehrotra opined that [Plaintiff] had a herniated disc, singular, not plural."  Tr. at 25.  Then, the ALJ noted Plaintiff "went on to state that his back sometimes went out and he was unable to move for 3 or 4 days" and "he did not leave his room for 1 year from 2005 to 2006," but the ALJ observed that neither of those complaints were made "to any of the examining physicians in the record" or found "in a report from any of the examining physicians."  Tr. at 25-26.  The ALJ also indicated Plaintiff stated "he could not deal with his

-14-

wife or children and was socially secluded," yet Plaintiff said "he took care of his 5 children while their mother worked and that he drove them around with him as he ran errands." Tr. at 26. Finally, the ALJ observed Plaintiff "admitted that he had a valid driver's license, that he attended ACT group meetings on a weekly basis and that he saw his primary doctor once a month." Tr. at 26.

Furthermore, the ALJ did consider Plaintiff's alleged side effects from his medications.[8] The ALJ indicated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. at 24. While the ALJ was addressing the examining and nonexamining physicians' opinions, the ALJ also indicated that Plaintiff had reported some side effects due to his medications. See Tr. at 17, 18, 20, 21, 27. Simultaneously, the ALJ indicated Plaintiff reported he is doing well on his medication despite some side effects, Tr. at 18, 27, and his "depressive symptoms are much improved on his present medications," Tr. at 17. The ALJ also recognized that Plaintiff stated his "medication was still being adjusted and that it was helpful to him." Tr. at 20.

The undersigned finds the ALJ properly considered the relevant factors in determining Plaintiff's statements were not fully credible. See Davis, 287 F. App'x at 748. In making this determination, the ALJ properly considered the alleged side effects of Plaintiff's medications. Therefore, the undersigned finds no error regarding the ALJ's credibility determination of Plaintiff or regarding the alleged side effects of Plaintiff's

---

[8] Although the portion of Plaintiff's Memorandum analyzing Plaintiff's complaints of medication side effects discusses a "Ms. Dodd" and the citations to the record do not correspond to any pages indicating Plaintiff's alleged side effects, Pl.'s Mem. at 15, the undersigned reviewed the record and found instances of Plaintiff alleging he experienced various side effects related to his medications. See, e.g., Tr. at 277, 281, 282, 299, 312, 331, 368.

medications. The ALJ's Decision regarding Plaintiff's credibility and alleged side effects of his medication is supported by substantial evidence.

## V. Conclusion

The ALJ erred because he failed to consider and evaluate the treatment notes from ACT Corporation, Plaintiff's treating facility. The ALJ properly rejected the opinions of Dr. Verones, properly determined Plaintiff's credibility, and properly considered the alleged side effects of Plaintiff's medications. After the Commissioner evaluates and considers the treatment notes from ACT Corporation and explains how those notes affect Plaintiff's RFC, the Commissioner shall, if appropriate, reevaluate Plaintiff's RFC and pose a new hypothetical to a VE. In accordance with the foregoing, it is hereby

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

   (a) Consider and evaluate the treatment notes from ACT Corporation and explain how those notes affect Plaintiff's residual functional capacity;

   (b) If appropriate, reevaluate Plaintiff's residual functional capacity;

   (c) If appropriate, reassess the hypothetical and pose it to a vocational expert; and

   (d) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk of Court is directed to close the file.

3. If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b). See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 30, 2011.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jld
Copies to:
Counsel of Record

-17-